I'm happy to be here. And we will begin with argument in the first case for the morning, Suzanne Phillips v. Postmaster General. Mr. Bagan, am I pronouncing it correctly? Yes, Your Honor. Thank you. Christian Bagan of Weenan & Bagan for the plaintiff appellant, Suzanne Phillips. May it please the Court, I'd like to reserve five minutes for rebuttal. Granted. Ms. Phillips brought claims for Title VII retaliation and breach of contract against the Postal Service. The jury found the Postal Service liable for breach of contract, but was not permitted to award Ms. Phillips damages. The lower court held- Well, let's stop right there. I have to confess, I found this record really confusing. And it is pretty clear to me anyway that, yes, there was a Title VII claim and that there was a contract claim. And it's also clear that there were no damages awarded on the Title VII claim and an award on the contract claim. But what happened in between, that is, the filing of the complaint and the eventual verdict, is less than clear and there were a heck of a lot of events intervening that suggest to me that it might not be as easily said that the jury wasn't permitted to award damages. Were there occasions that you could have sought damages on the Title VII claim and did not? For example, if I understand correctly, the jury instructions did not provide for- provide instructions to the jury for an award of damages on the contract claim, did they? Your Honor, I think you misspoke a moment ago when you referred to Title VII, just so the record is clear. The jury found for the plaintiff on the contract claim- I did misspeak if I said that because I understand it's the contract claim you prevailed on in terms of the jury award. And as far as our- Was there ever a request in jury instructions, proposed jury instructions for damages? Yes, Your Honor. We proposed a jury instruction for compensatory damages only- On the contract. It was not differentiated, Your Honor, because our position was that the compensatory damages were the only monetary damages that she could recover. We agreed that she did not suffer any lost wages or anything. And so the two claims, the damages available for both the contracts- Wasn't there a point in one of the conferences that you had with the district court where you indicated that what you would do was seek some kind of declaratory or injunctive relief on the contract claim if you prevailed on the contract claim? Yes, Your Honor. The court, in response to the defendant's suggestion after the close of the plaintiff's case, suggested that it may be better if there were an additional jury instruction to address a compensatory damages or a damages award for the contract itself. Up until that point, there had been absolutely no discussion or any dispute, Your Honor, over the fact that she was entitled to compensatory damages on the contract. But you agreed on the plaintiff's side to revise jury interrogatory number four to take out the language. It originally said if you find that plaintiff was retaliated against because she engaged in protected activity or that defendant breached its settlement agreement with plaintiff, she is entitled to damages, you agreed to take out that language or that defendant breached its settlement agreement with plaintiff. So doesn't that imply that you agreed that the only relief you were seeking on the contract claim was specific performance? No, Your Honor. It does not imply that because the jury instruction that said that the damages were coextensive remained in. The defendant was expressly alerted to that fact before the parties conferred and slightly revised the verdict form. However, the verdict form that both parties and the court permitted to go to the jury at the end of closing argument provided that the jury could award damages on the line for damages on a finding of liability under either claim. So I think what happened in conference was that the defendant had raised an issue, the parties went and did some research, met and conferred, and they together agreed to one revision. I can't understand why you agreed to that deletion of that language or that defendant breached its settlement agreement with plaintiff. Well, Your Honor, I think it damages for breach of the settlement agreement. Your Honor, I think that it may very well be. I wasn't in the conference with the assistant U.S. attorney, but from conferring with my co-counsel, it seems that it's consistent that that might be taken out as being overly stating that the jury could award damages on both. As Judge Smith said, I mean, I'm quoting from page 590, there aren't any monetary damages under the contract itself. I mean, isn't that pretty clear? Yes, Your Honor. There are no, when you say there are no monetary damages under the contract, that is to say it's not a traditional commercial contract where you say, well, I've lost X amount. But that isn't what the transcript says. It says that there aren't any monetary damages under the contract, unquote. Isn't that a forfeiture of any claim to monetary damages under the contract? I don't believe so, Your Honor. I believe that the plaintiff is entitled to compensatory damages as a matter of law under the contract and is also entitled to an award of monetary compensation as a matter of equity. Right after the quote that Judge Shigaris and I just pointed to. I'm sorry? Right after the quote, right after the statement that appears in the record that Judge Shigaris just cited and I repeated, counsel also stated, this is the very next sentence in the transcript, if there is a finding of liability which is coextensive, to the extent we were looking for anything under the contract, we would come back to the court for injunctive relief or otherwise make her whole. Yes, Your Honor, and because at that time the coextensive instruction meant that a finding of liability under either of the counts would entitle us to damages awarded by the jury. All that we were saying in that context was if you leave in the coextensive instruction and you leave the verdict slip as it is, we would obviously not be entitled to compensation for both Title VII and the contract. We would recognize that if the jury awarded us one line of compensation, then we'd under an award purely under the contract as opposed to under Title VII? No, I don't believe so, Your Honor. Not as a matter of statute as it is under Title VII, certainly. But the winning under the contract alone really didn't do you a lot of good here, did it? I'm sorry, I didn't hear the first word, Your Honor. I said winning under the contract alone really didn't provide you much benefit. Is there some difficulty with the speaker here? Because I know you're straining to hear me. No, I'm sorry, Your Honor, just a couple words here and there. I'm sorry. Your Honor, yes, I think what Your Honor is referring to is the fact that the damages are coextensive. As we pointed out in the briefing, under Title VII, the Postal Service is not amenable to punitive damages, and punitive damages aren't available under the contract. Under the contract and under Title VII, our client was entitled to compensatory damages. Any other damages, whether they be attorney's fees or equitable relief in the form of specific performance or other directions to the Postal Service to comply with Title VII, those would all be reserved to the judge. So it's perfectly consistent, and the judge was the one who proposed the jury instruction that said that the claims were coextensive in the first place. The parties all agreed to that before the jury retired. In this case, I don't think there can be any doubt that when we made our arguments and the parties agreed to the jury instructions, and the jury instructions correctly stated that the damages available were coextensive and it permitted an award of compensatory damages as provided under Pennsylvania law for the breach of this kind of contract, that it correctly stated the law and that it was error for the judge to go back after they had been delivering for three days and change both the substantive jury instruction that we relied on as well as the verdict slip and remove that power from the jury to award damages upon a finding of liability. When the judge further refused to award any damages on our post-trial motion, we found that that also was error because the judge said that you can't have both an equitable remedy and damages under contract. What relief would you be looking for if we were to agree it didn't forfeit the question of the entitlement to damages for breach of contract? What would you ask us to do? Well, Your Honor, I think that the appropriate remedy in that case would be a remand for a trial on damages alone for the contract. How would we know, though, and how would the jury that gets that issue know how the contract was breached? As I recall, the contract talked in terms of not taking action on account of the first discrimination claim in certain specific respects. How would they know how the contract was breached? Well, Your Honor, my time is almost up, but I believe the way to go about it would be that the parties would be permitted to present a summary of the evidence that supported the retaliation claim or the contract breach through retaliation and the evidence of that is in the record. You indeed did receive a contract remedy here, did you not? Judge Ambrose did enter an order providing some declaratory or injunctive relief after the jury verdict. That is correct, Your Honor. She awarded partial relief but not all the relief that was pled, proven, and demanded at trial. My time is up. I know your time is up, but I did want to ask a question on the sanctions issue. Yes, Your Honor. Did you seek sanctions under Rule 37 of the Federal Rules of Civil Procedure? Yes, Your Honor. I didn't see any reference to the safe harbor provision in Rule 37 being mentioned by anybody. Go ahead. No, Your Honor. I found that interesting as well that the Postal Service did not expressly raise it. I think that what is clear in the briefing below on the motion for sanctions that was originally filed is that the Postal Service's response to that was many-fold. The rule that required us to maintain ESI wasn't in effect as of that date. That was their first defense. Their second defense was, well, we don't issue litigation hold notices until things get to court or to the administrative judge. The third thing was they did say, well, this was our policy that we just destroyed everything every 30 days regardless of any pending litigation. So I think that by implication it was there, although it was not expressly raised. I don't believe that they are entitled to the safe harbor because the good faith routine operation of electronic information system requires a party's intervention to modify or suspend certain features of that when litigation is reasonably foreseeable, which it was here in August 2006. We'll have you back on rebuttal, Mr. Bigot. Thank you, Mr. Covington. Thank you. Good morning. May it please the Court, I'm Alice Covington, representing the Postmaster General of the U.S. Postal Service. First to address some points raised during counsel's argument, a review of the record as a whole demonstrates that there was no request for contract damages here. The government consistently objected when the matter was discussed at trial. But there was an instruction to the jury that contract damages would be coextensive with retaliation damages. Was there not? There was that erroneous instruction, which makes... Unobjected to.  But it's clear from the record as a whole that the government wasn't taking that as a statement of what the contract damages would be, nor would that be supportable under the law. It's obvious that the understanding of that is that if there were a finding of liability on both claims, they wouldn't be entitled to double damages. However, the instructions as a whole and the jury verdict didn't give the... wasn't intended to give the jury the right to award compensatory damages. That issue was discussed, claimed to have had an opportunity to proffer specific damages instructions related to a breach of contract, making clear what they are. And in fact, when the issue was evolved during the course of jury deliberations, it was then for the first time that the plaintiff offered an instruction as to what contract damages would be. At that point, he pointed to Pennsylvania state law regarding when emotional damages, emotional distress damages might be available under a breach of contract. Those were never raised before. They were never given to the jury, and they're the only possibly appropriate contract damages there were. So there's never any discovery on that or anything of that nature? No. It was interesting listening to the idea of a remand at which the plaintiff would offer a summary of the evidence that supported the breach of contract claim because I don't think it is clear from this record what evidence supported the breach of contract claim. We know from this record what her title says. But yeah, you have a jury finding, though. We have a jury finding. That is correct. But to remand, and it's certainly not clear. It would be a re-argument of the case to go back and say what conduct to argue about what conduct breached the contract. The plaintiff never made a case as to what specifically it was. We can look at the record and surmise. Can I ask you to back up for a minute? I think you had raised some jurisdictional issues. Yes. You raised a preemption issue, didn't you? Yes, there is a preemption issue under the Brown v. GSA. Which you raised when? We did not raise that until the conclusion of the trial. Is that sufficient to preserve it? We need not have raised it because it is a jurisdictional issue. Is it? Yes, it is. It is a preemption. This kind of statutory preemption, when Congress has enacted a statutory scheme that preempts an entire area, as this Court said in the Lakota case, Section 409A provides a basis for jurisdiction absent some other statutory provision excluding that. In the recent case this Court issued in another Postal Service matter, just very recently, Anselma Crossing, this Court also addressed that provision of the Postal Reorganization Act and concluded that another statutory scheme preempted the Court's jurisdiction there. That's the point, though. Isn't that rule applied when it's the choice of forum that is at stake as opposed to which law is to be applied? In this case, it would be Pennsylvania law in the breach of contract, I take it? No, Your Honor, I do not believe so. I believe that is a complete preemption of district court jurisdiction. Well, isn't it sort of what you might call a mixed case where a party might have both a live discrimination claim and a contract claim? I mean, doesn't the Court have jurisdiction to hear that kind of thing? It's unclear under the law with a kind of – it depends upon what the Title VII settlement agreement is. Arguments can be made in a lot of different scenarios that there's no district court jurisdiction. Well, you know, the 29 CFR Section 1614504C discusses, you know, when an allegation of a breach of a settlement agreement is brought by a plaintiff. I mean, would that make sense in the CFR if you couldn't pursue a breach of settlement agreement claim in district court? Actually, I'm glad you pointed out that provision because it helps to clarify something. Under that provision, which explains what an employee must do when he perceives that a Title VII settlement agreement has been breached, says that an employee must provide notice of the breach, must – and there's a procedure that is gone through. And if the employee demonstrates there's a breach, then his former complaint that had been resolved is put back into effect, basically nullifies the settlement agreement. The employee can't then, after a finding that there's compliance, go back and go to district court. So rescission is the only remedy. That is precisely correct. But what happened here is the agreement basically duplicated what Title VII says. And there's a subsequent – there were certain acts that came up later. That's not disputed. There were acts that occurred after the settlement agreement that we're not sure which ones, but apparently the plaintiff's position was that some of those acts violated the agreement. The same regulation, 1614.504 – it might be Part C, I'm not sure – makes clear that allegations that subsequent acts of discrimination violate a settlement agreement shall be processed as separate complaints. It's very clear. Employee, something happens, an agreement says don't retaliate or something like that, the employee is supposed to go, exhaust the administrative process, pursue the Title VII remedy after that is over. And this wasn't raised until after you have jury findings. No, it wasn't. It certainly should have been. There was confusion. There were the government not used to postal service cases and perhaps not a lot of Title VII cases made arguments that you would make with respect to any other governmental agency. Maybe the court bought them, dismissed the claims, said it should have gone to the federal court of claims or something else. And it was only after that ruling that the plaintiff finally found 409C and came up with a basis for jurisdiction. The government had argued that this is going to make the case very confusing, which it did, but it was not pursued further at that time. It certainly should have been. There was confusion from day one of the trial as to what the difference between the two claims were. I think there continues to be confusion. It's a confusing record. It's certainly not straightforward. But it was the plaintiff's burden to show first that there was actual jurisdiction for this claim, that it was not duplicative, to explain how it was different. We still can't tell precisely. So can you just run by me exactly why we don't have jurisdiction on the contract claim? It's because you're saying that the proper remedy would be rescission and that wasn't on the table? Right. Okay. Rescission and reinstatement of the prior complaint. So, okay, all right. And that's all because Title VII provides an exclusive scheme for resolving all of these issues, especially where the breach is based upon a provision that says don't retaliate. On the sanctions question, it is clear that the Postal Service did not timely implement a litigation hold, right? Yes, that is true. They should have moved a little quicker on that. Now, how can the plaintiff show prejudice? How can the plaintiff show that they lost information when it's undisputed that emails that existed, I guess, at least from September of 2006 to May of 2007 had been lost? Well, I think you have to look at it in the context of the entire case. The plaintiff has never argued, nor would there be a basis for arguing, that the Postal Service had some duty to issue litigation holds prior to the time that a formal EEO complaint was filed. And that's September of 2006? September or December. It was actually not filed until December. There's some dispute about when that was. But all of the events that were discussed at trial, that supposedly were acts of demonstrating some sort of hostile work environment, occurred before that time. There would not have been – there is no way that there would have been a litigation hold in place that would have protected routine destruction of any of those emails. So we're just talking about a few months while the EEO complaint was pending, that on the main server of the Postal Service, these emails weren't preserved. Employees and supervisors have preserved their files. They have to do that. All the hard copy files relating to discipline or whatever files they had on the employee were there in place. Were hard copies of emails during this period of September of 2006 to May of 2007 produced? It was only from the formal policy requiring retention and issuance of litigation holds wasn't issued until May of 2007. So it was a few months in the beginning of 2007 that we're talking about mailing. And I think that covers the jurisdictional issue and the abuse of discretion. I would want to point out one thing about the course of the trial. Just so the record's clear, you're saying there's no abuse of discretion? There's no abuse of discretion. Okay. I think it's important also to see that after this entire trial was over and the final verdict was reached at that point in time, the plaintiff changed his whole theory and argued that liability was coextensive. He raised that a little when the jury question came back, started arguing that it was coextensive. And then after the final verdict, there was another argument, liability's coextensive. At that point, the government said, well, if that's what you're saying, Brown versus GSA, the contract claim drops out. Your point being that prior to that time, all of the discussion relative to coextensiveness was relative to damages? There was no discussion, really. There was the line and the instructions about it and which plaintiff was referring to. One point about the appealability issue that we do raise with respect to the spoiliation. I would like to point out that the notice of appeal did not refer to the Title VII judgment. I believe notice of appeal should certainly point to the judgment. This was one judgment. It should. What is your authority for that? It's not jurisdictional, is it? Yes, it is. And what's your authority for that? The case law we cited in the brief of various cases, including of this court, that have said that a notice of appeal, filing an appropriate notice of appeal, giving notice of the matter that is being appealed has to be issued for the court to obtain jurisdiction. In this case, if you look just at the notice of appeal. So we should not liberally construe the notice of appeal? You should definitely liberally construe it. And the question is how far do you go with that? Looking at the notice of appeal itself, it was apparent to the government that the plaintiff was not appealing the Title VII judgment. There is no relationship between the damages ruling and the Title VII judgment itself. No connection whatsoever there. The intention to appeal the Title VII judgment wasn't obvious. And, again, there was, unlike normal cases where it's difficult to show prejudice, obviously the bottom line is we don't think ultimately there's prejudice because we did brief the matter and we think there was no abuse of discretion in denying sanctions. But there were issues that, had we known that the plaintiff was going to appeal anything dealing with, that led up to the Title VII judgment and that finding of the jury that we were not liable under Title VII, then we would have raised the merits of the contract claim. And, of course, only the November 30th order is referenced in the notice of appeal, right? Only that order, yes, sir. I see my time is up. Thank you. I'd ask for the decision to be affirmed, thank you, or a ruling that the court lacked jurisdiction over the breach of contract claim. Thank you, Ms. Bevington. Mr. Bagen, rebuttal. Just a few points, if I may, on the Anselma Crossing case. That case specifically addressed the Contract Disputes Act. That act applies to a very limited scope of certain contracts concerning real estate and the sort of commercial contracts that you usually refer to. That case and that law, CDA, has nothing to do with an individual agreement between the Postal Service and Ms. Phillips in this case. As to the preemption argument, Brown simply says that if you have a discrimination case, you bring it under Title VII, you can't bring it under the state law. And we certainly don't dispute that. The rest of the points that we made in the reply brief on that point clearly establish there's no preemption here. And the argument from the Postal Service that the contract claim somehow should not be allowed, in the first instance, again, was a pleading argument that they raised after the close of discovery where they said, you didn't assert the 402A waiver of sovereign immunity. That was the first argument to try to get rid of the contract claim. That was initially agreed to, and then the court allowed it to be reversed by filing an amended complaint. So on the preemption issue, that simply does not apply. The other thing that I think is important to notice is that while counsel refers to this case and her client as the government, the Postal Service is not the government. The Postal Service is subject to those administrative, those arcane and Byzantine, agreedly, regulations of 29 CFR 1614. But the citation to that provision raised by Judge Shigeras specifically refers to internal EEO processing that they are entitled to, that they are required to perform, whereas the EEOC would normally perform that function in private. That CFR has nothing to do with Ms. Phillips' common law right to bring her contract breach claim of action as a supplemental claim to her Title VII. What period of time did the alleged acts of retaliation encompass? All the way up through the present, Your Honor. They're still continuing. So you would have had evidence from September of 2006 to May of 2007 of acts of retaliation? Absolutely, Your Honor, and I wanted to make that point. When the Postal Service, I did not hear deny that they did absolutely nothing to maintain even the document, the hard copy documents of communications that were relevant to Ms. Phillips, what was being done to her on the work floor on a daily basis, and what the manager's reactions were once the new EEO was filed. So you are correct, sir, that the fact that they didn't maintain the records from the point of the EEO filing forward is absolutely relevant because the retaliatory conduct continued, as I said, through the time of trial and, in fact, through to today. So have you brought a claim for breach of the district court's judgment of specific performance? Well, Your Honor, we have not yet, but we certainly have that as a possibility, and it seems to me that if Ms. Phillips is not provided with the remedy that will cause the Postal Service to recognize that it needs to stop its conduct towards her, that it may very well be that Ms. Phillips will be back before the district court in any event. I think that that would be unfortunate and unnecessary when the court has the opportunity to correct this and hopefully cause the Postal Service to change its conduct once and for all. The other point that I wanted to make as far as the timing for the sanctions issue is that the formal complaint in this case was filed on September 14, 2006. That's in the record. That cannot be disputed. The Postal Service tried to pretend that it did not receive the formal complaint when my father unfortunately passed away shortly thereafter, but we were able to get them to process it and take it to trial. The only other issue I think that I'd like to address again on the sanctions issue is that the court's ruling below imposed an impossible burden on the plaintiff in this case, where the standard under Schmidt and Brewer is that the plaintiff only needs to be able to point to evidence and give a concrete, plausible explanation for what the destroyed evidence would show in order to give rise to the inference that this bulliation occurred. I think that was wrong. I think we've addressed that in our briefing. And I also think that it was wrong, as we cited in our briefing, that there's any requirement of showing bad faith. If you fail to stop the automatic destruction, that is intentional conduct, and that is sanctionable. Thank you, Mr. Fagan. Thank you to both of the counsel for your helpful arguments.